No. 15,639.

MILNER *v.* HEISER.
(178 P. [2d] 665)

Decided March 3, 1947. Rehearing denied March 24, 1947.

Mr. PAUL W. LEE, Mr. GEORGE H. SHAW, Mr. DONALD C. MCCREERY, Mr. WM. A. BRYANS, III, Mr. CHARLES J. KELLY, for plaintiff in error.

Mr. CARLE WHITEHEAD, Mr. ALBERT L. VOGL, for defendant in error.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

JOHN PETER HEISER on December 21, 1942, was the owner of 96 vacant lots in Hillsborough Subdivision, located in Adams county, Colorado, along Federal Boulevard and north of the City and County of Denver. The subdivision consisted of four blocks numbered 1, 2, 3, and 4, containing twenty-five lots each, four of the lots having been previously sold. On the above date Heiser entered into a written contract with A. Milner, a real estate man, by virtue of which the latter was given the exclusive sales rights for a period of two years, upon certain terms and conditions hereinafter discussed.

The contract provided inter alia:

"Fourteenth: *The option herein granted shall extend for a period of two years from date hereof, provided Party of the Second Part shall sell fifty per-cent of said lots within one year from the date of first sale,* and further shall sell twenty-five per-cent additional of said lots within two years from that date. In the event Party of the Second Part shall have sold the required number of the lots within two years from the date above mentioned, then this contract shall be extended in full force and effect for an additional year.

"Fifteenth: *"In the event said Party of the Second Part does not sell the required number of lots within the time specified, the Party of the First Part may, without prejudice to rights or commissions accruing to Party of the Second Part, under sales made prior to cancellation*

*becoming effective, cancel this agreement upon thirty (30) days notice in writing to Party of the Second Part,* said cancellation to be addressed to A. Milner, Denver, Colorado, and forwarded by registered mail, said thirty days to be computed from date of registering said written notice." (Italics supplied)

In addition to the foregoing, while not actually inserted in the written contract, it was mutually agreed as a condition or inducement of said contract, that Milner was to install "a water system" to supply purchasers of lots with water for domestic use and "to put in all the water mains." It is conceded that the lots could not be sold unless water was made available to the purchasers thereof.

Milner entered upon his duties under the above contract immediately, and the first sale of lots was made December 28, 1942; consequently, by virtue of said contract, Milner had until December 28, 1943, in which to sell fifty per cent of the lots.

Milner not having sold the required percentage of the lots as above mentioned, Heiser, acting under paragraph. fifteen of the contract above set forth, served upon him the following notice:

"March 8, 1944

"Mr. A. Milner, 1735 Stout Street,

Denver 2, Colorado.

"Dear Sir:

"You are hereby notified that the contract between us dated December 21, 1942 is hereby terminated under paragraph fifteenth of said Contract because of your failure to sell 50% of the lots in accordance with paragraph fourteenth of said contract as shown by your statement of March 1, 1944.

"The check enclosed with said statement is accepted without prejudice to this notice, the same representing only my portion of payments made on lots heretofore sold by you.

"You are further notified that the said Contract of December 21, 1942, between us is hereby declared defaulted and forfeited by you for your substantive breach thereof consisting of your entire failure to advertise or make any effort to sell said property since on or about the first of April, 1943 and because of your termination on April 3, 1943 of the employment of the exclusive sales agent for said property who had made all of the sales up to that time and your total failure to make any effort or provision for sales of said lots as a substitute for the services of said salesman.

"You are, therefore, notified to immediately cease and desist from any further actions of any kind under our said Contract.

"The two foregoing notices of termination are separate and independent of each other.

"This letter is on the letterhead of Whitehead & Vogl because the same is drafted by Carle Whitehead who is my attorney in this matter.

"Yours very truly,

"John Peter Heiser"

As a result of the above notification, the parties met in an effort to settle their difficulties, and after failure of their negotiations to make such settlement, Heiser's attorney notified Milner as follows:

"March 22, 1944.

"Mr. A. Milner, 1735 Stout Street
Denver 2, Colorado.

"Dear Sir:

"Confirming statement which I made to you in conference between yourself, Mr. John Peter Heiser and myself at your office this day, you are hereby notified to proceed as follows regarding lot sales contracts heretofore negotiated under your contract with Mr. Heiser of December 21, 1942:

"1. Select and retain in your office those of said sales

contracts which you wish to (have considered as in force and out of future payments on which you desire to claim commission).

"2. Continue to collect payments on such contracts under and according to the terms of paragraph 'Tenth' of said contract of December 21, 1942, said payments being payable at your office according to the terms of said sales contracts and according to the terms of said contract of December 21, 1942.

"3. You are to report to Mr. Heiser on said collections as provided in said contract of December 21, 1942 and, when sufficient payments are made by any purchaser Mr. Heiser shall execute and deliver deed, etc. as required by the sales contract. In order that he be able to do this you will refrain from in any manner clouding his title to said property.

"4. Any of such sales contracts not so selected and retained by you shall be turned over to Mr. Heiser for such action as he may deem best, same, and future payments thereon, if any, to be free of any claim by you for commission or otherwise.

"You are warned not to encumber or cloud Mr. Heiser's title in any manner.

"Yours very truly

Carle Whitehead

"Attorney for John Peter Heiser"

After receipt of the last above notice, Milner recorded his contract March 24, 1944, in the office of the clerk and recorder of Adams county. Upon being advised of the recordation of said contract, Heiser, on April 10, 1944, notified Milner to remove said contract from the public records, which Milner refused to do.

As a result of the above and foregoing, Heiser brought suit against Milner in May, 1944, for a declaratory judgment, alleging in substance as above set forth, and prayed that the contract above mentioned be declared terminated as of March 9, 1944, or in any event, as of

April 8, 1944; for an accounting, together with damages, actual and exemplary, for clouding of plaintiff's title.

The defendant Milner's answer to the complaint consisted of four separate defenses, and a counterclaim against plaintiff. The first defense was, that the complaint failed to state a claim against the defendant upon which relief could be granted; the second consisted chiefly of admissions and denials; the third was in the nature of confession and avoidance and an allegation that failure of the defendant to comply with the terms of the contract was on account of his inability to procure a priority order from the War Production Board, permitting him to lay water mains in the Hillsborough Subdivision, and by reason thereof he should be released from the obligation in the contract to sell fifty per cent of the lots within one year from and after the sale of the first lot; the fourth defense was predicated upon an alleged estoppel growing out of the fact that the plaintiff had permitted the defendant to expend approximately $1500 between January 15, 1944, and February 29, 1944, a short time before the attempted cancellation, in the preparation of the lots for sale, and by reason thereof that plaintiff should be estopped from terminating the contract.

The counterclaim of the defendant is based upon the fact that plaintiff notified defendant to *immediately* cease and desist from any further actions of any kind under said contract, instead of giving defendant the *thirty days' notice* of cancellation as provided in the contract. In this connection defendant alleged that if given thirty days' notice, "defendant would have been able to recoup the expenditures incurred and would have been able to sell all or most of the lots in said addition to his profit in the approximate sum of $28,784.47; that because of the failure of plaintiff to give defendant the required thirty days' notice, defendant has been damaged in the sum of $28,784.47." The defendant thereupon prayed that the contract be declared to be in full force and

effect, or in the alternative, for damages in the above sum. The reply or answer of the plaintiff to the counter-claim of the defendant consists chiefly of admissions and denials.

The trial court found the issues in favor of defendant and against plaintiff on plaintiff's complaint, and in favor of defendant on defendant's counterclaim, and awarded damages to the defendant in the sum of $6,320.91, such findings of the trial court being as follows:

"From the mass of testimony and the great number of exhibits introduced in this cause, lasting from March 21st to and including March 31st, the Court believes the following facts pertinent to a determination of the respective rights of the parties to be established.

"First: That the introduction of the water system to the Hillsborough Addition was a material inducement for the entering into the contract between plaintiff and defendant and was so understood by them.

"Second: That practically from the inception of their dealings there was a lack of co-operation between the plaintiff and defendant, in that the defendant did not keep the plaintiff fully and thoroughly advised as to the situation respecting the Addition, and the plaintiff made little effort to inquire what the conditions were. The result was the defendant was led to believe the contract in full force and effect and continued in his own sweet time to proceed to perform the contract.

"Third: That the defendant knew the contract was cancellable and without consultation with the plaintiff proceeded to incur obligations.

"Fourth: That the litigation between Mr. Ruthven and Mr. Milner in the District Court at Littleton played a material part in causing the plaintiff to attempt a cancellation of the contract.

"Fifth: That the proceedings before the Public Utili-

ties Commission shows that a certificate of Convenience and Necessity existed only for Blocks One and Two.

"Sixth: That the evidence discloses that through the entry of the new deal between Mr. Heiser and Mr. Ruthven, Mr. Heiser will get a substantially larger return than he would have under his contract with Mr. Milner.

"The Court feels that it is regretable that the parties did not attempt to compromise their differences as suggested by the Court at the original hearing on September 19, 1944 and at the pretrial conference. In the opinion of the Court this is a shining example of unnecessary litigation in that good faith on the part of both parties and a spirit of compromise would have resulted in the avoidance of this expensive litigation.

"The Court specifically finds:

"First: That the contract dated December 21, 1942 was not abandoned by the defendant.

"Second: The notice of March 8, 1944, from the plaintiff to the defendant, attempting to cancel the contract was ineffectual.

"Third: The defendant is entitled to damages on his cross-complaint for the wrongful cancellation, *but only for what he could have derived from the sale of Blocks One and Two, it being demonstrated that he could not sell Blocks Three and Four due to there being no water on them.*

"Therefore, the Court finds for the defendant on the plaintiff's complaint and for the defendant against the plaintiff on the defendant's counterclaim.

"The Court experienced great difficulty in arriving at the damages. The measure of damages should be what the defendant could have made had the contract not been cancelled in the manner in which it was attempted to be cancelled. *Viewing the situation as a whole, according to Exhibit 26, the plaintiff would have made, according to his testimony on the exhibit a net*

"On Block One of.............$5,243.80
"On Block Two of.............5,885.20

"Making a total of......................$11,129.00

"As an offset against this, the defendant's own testimony shows that he would have been liable for the following expenses:

"*To provide water in Block Two............$1500.00*
"*A credit of commissions to March 1, 1945...   718.65*

"Through defendant's failure to proceed diligently to dispose of the property the plaintiff has been obligated to pay an additional year's taxes in the sum of.........................   89.44

"*Further, the defendant would have had to incur expenses in disposing of the lots in Blocks 1 and 2, and according to the testimony services of salesmen would have been $250.00 per month, and the testimony indicates that it would have taken at least five salesmen a period of two months, making an item of...................   2500.00*

"*These items totaling .....................$4,808.09*
"*Deducted from the profit leaves...........$6,320.91*

Which the Court finds is due the defendant on his counterclaim for damages for the wrongful cancellation of the contract.

"*The Court finds that the contract cannot be reinstated due to the fact that plaintiff and Mr. Ruthven have entered into a contract for the sale of the unsold lots in the Addition, and even though it could be reinstated, it is apparent that plaintiff and defendant would not have happy business relations. Therefore, the Court orders the defendant to turn over to the plaintiff all existing contracts in his possession, and further authorizes the Clerk of this Court to turn over to the plaintiff any and all sums now in his hands and the defendant is to do all things necessary to remove the cloud on the*

*title of plaintiff's property by his recording of the contract.*

"The Court further finds that a motion for a new trial is unnecessary and if one were filed the same would be denied.

"Accordingly, judgment is entered for the defendant against the plaintiff on the plaintiff's complaint and judgment is further entered in favor of the defendant and against the plaintiff on the defendant's counterclaim, in the sum of $6,320.91, together with interest at the rate of six per cent per annum from the date of the filing of the complaint, and for costs.

"Dated at Denver, Colorado, April 2, 1945.

"Joseph J. Walsh, Judge."

Thereafter, on April 23, 1945, supplemental opinion and findings were made and entered, which without caption, are as follows:

"The Court listened with attention to the arguments of counsel for a modification of the judgment awarding damages. Naturally, the plaintiff feels that the amount awarded the defendant on his counterclaim was too high, and just as naturally the defendant feels it was too low. Differences of opinion are unavoidable.

"The Court kept these two propositions in mind, first, a violation of the contract had to be established, and, second, the loss of anticipated profits had to be shown with reasonable certainty. The subject of measure of damages is complicated and often confusing and, therefore, the second proposition gave difficulty to the Court.

"The Court has again reviewed extensive notes taken at the time of trial. The profits anticipated from the principal contract must have reference to the dependent and collateral engagement to supply water to all the blocks and it was on the faith and expectation of the performance thereof that the performance of the principal contract was dependent. *The Court allowed damages for the loss of anticipated profits on Blocks One*

*and Two caused by the breach of the contract and allowed them to the extent that the evidence afforded a sufficient basis for estimating their amount and which the Court feels it arrived at with reasonable certainty.*

*"The consequences of Mr. Milner's failure to provide water for Blocks Three and Four were injurious and must be attributable, as shown by the evidence, to his own indiscretion and fault. No difficulty or embarrassment were felt by the Court in disallowing damages for the anticipated profits that might have been obtained from the sale of the lots in Blocks Three and Four, because the evidence demonstrated that they were remote, speculative and incapable of ascertainment. The profits Mr. Milner claimed to have on lots in Blocks Three and Four were purely conjectural and embraced too many elements of uncertainty to form a just basis upon which to measure damages.*

"The Court is of the opinion that the judgment is right and *that the evidence only warrants the award of damages for lots in Blocks One and Two and that the amount awarded in the light of the evidence is just and correct.*

"Therefore, the findings and judgment made and entered on April 2, 1945 will not be amended except, it having been agreed by counsel that an effort had been made to compromise and settle the case, that on page two, line two, the words 'attempt to' will be deleted. The Court is of the opinion that the findings and judgment sufficiently require the defendant's accounting to the Clerk of the Court for all moneys collected by him to the date of the effectiveness of the judgment and for the providing by the defendant of all original records as to the existing contracts showing payments, discounts, and other data bearing upon the present status of such contracts which the Court realizes the plaintiff must have in order properly to handle the contracts. Any dif-

ficulty in this respect can be handled by future orders.

"Dated at Denver, Colo., April 23, 1945.

"Joseph J. Walsh, Judge."

Concerning the above findings, Milner in his brief states:

"The Issues Presented on This Review and Summary of Argument.

"*The italicized portions only* of the foregoing opinions, findings and conclusions of the trial court present all the issues raised upon this review by Milner, plaintiff in error. Such issues relate only to the refusal of the Court to reinstate and enforce the contract, repudiated unlawfully by Heiser, and the method and amount of the Court's award to defendant Milner. We summarize them. The trial Court erred:

"(1) In finding that the Heiser-Milner contract 'cannot be reinstated' because of the Heiser-Ruthven sales contract of April 12, 1944 (f. 1553, p. 42);

"(Spec. of Points, Nos. 1, 3.)

"(2) In concluding that 'even though it could be reinstated' it should not be 'because plaintiff and defendant would not have happy business relations' (f. 1554, p. 42);

"(Spec. of Points, Nos. 2, 3.)

"(3) In holding that Milner is entitled to profits for the wrongful cancellation 'only for what he could have derived from the sale of Blocks One and Two,' on the assumption that Blocks Three and Four could not be sold 'there being no water on them' and on the theory that the profits to be derived from Blocks Three and Four were remote, speculative and 'incapable of ascertainment' (ff. 1550, 1567-1569, pp. 39-40, 43-44).

"(Spec. of Points, Nos. 4, 5, 7.)

"(f) In the computation of the award as to Blocks One and Two even under the Court's theory of limited recovery (ff. 1551-1553, pp. 40-41).

"(Spec. of Points, Nos. 6, 7.)

"The errors of the trial Court complained of comprehend errors of both law and fact."

With respect to assignments 1 and 2 above, we hold that the trial court was justified under all the evidence in the case, in making the findings herein set out. It is immaterial on this phase of the case whether the contract was terminated March 8, 1944, when the first notice was given, or thirty days thereafter under the provisions of the contract, or whether it was rescinded by plaintiff April 12, 1944, the date of Ruthven and Heiser sales contract, or whether it was terminated when Milner recorded his contract March 24, 1944. It is certain that the relationship between Milner and Heiser, created by the contract, was terminated sometime between March 8, 1944 and April 12, 1944. The trial court held that the contract had been cancelled and that it "cannot be reinstated" and *if* it could be reinstated, it should not be because "plaintiff and defendant would not have happy business relations." The above is but one of many reasons that are mentioned in the findings, why the contract should not be reinstated. It is pertinent to observe that any reinstatement of the contract would be wholly ineffectual, regardless of the reason therefor, because the plaintiff could, and no doubt would, after the contract was reinstated, serve a thirty days' notice to cancel the same under paragraph fifteen, and then again terminate the contract.

The plaintiff in error concedes in his brief: "In exercising the court's discretion in the awarding of alternative relief, if it should be considered that a final disposition of the controversy would be to the advantage of the litigants, and that the determination of status would not afford requisite certainty, or that it required continued judicial supervision, *then the court would be warranted in awarding the alternative of a money judgment which would require an allowance of full value of the right to reinstate.*"

Also he states in his brief: "The Heiser-Milner contract so repudiated by Heiser, on the record and the law applicable thereto, should be held to be 'in full force and effect,' and so enforced. *If, however, this court should find it inappropriate so to do, then it* (the court) *must award to Milner the full value of his rights and interests created by the contract of December, 1942,* * * * *"

Considering the findings, the trial court in effect determined: "That a final disposition of the controversy would be to the advantage of the litigants," that "the determination of status would not afford requisite certainty," that "it required continued judicial supervision," and that it would be "inappropriate" to reinstate the contract.

We hold from the above and foregoing that the trial court was fully justified in refusing to reinstate the contract between Heiser and Milner, and that there is no merit to assignments (1) and (2) above set forth.

With respect to assignments (3) and (4), Milner contends in substance that the trial court erred in not awarding damages on account of loss of prospective profits from sales of Blocks 3 and 4, and that the sum allowed on Blocks 1 and 2 is inadequate.

Milner's counterclaim, under which he sought to, and did, recover judgment against Heiser in the sum of $6,320.91, and which he now says justifies a much larger judgment, is based upon the following allegation: "That contrary to the terms and provisions of said Paragraph Fifteenth plaintiff on March 8, 1944, by letter set forth in plaintiff's complaint, notified defendant to immediately cease and desist from any further actions of any kind under said contract; that had plaintiff given to defendant the thirty days notice of cancellation, as required and specified in said Paragraph Fifteenth, *defendant would have been able to recoup the expenditures incurred and would have been able to sell all or most of the lots in said addition to his profit in the ap-*

*proximate sum of $28,784.47; that because of the failure of plaintiff to give to defendant the required thirty days notice defendant has been damaged in the sum of $28,784.47."*

Consequently Milner, under the above cross complaint, claims the right to be compensated for profits he could or would have earned during the thirty-day period following March 8, 1944, when the notice of termination was served. He contends that he could have earned $28,784.47 during that period by the sale of all or most of the lots in the four blocks, and that his loss was occasioned by the failure of Heiser to "give the defendant the required thirty days notice."

It is not necessary to set forth herein in detail all of the evidence contained in this voluminous record which would tend to justify the trial court in reaching its conclusion. It will suffice to mention a very small portion thereof, which in itself is sufficient to support the findings, to wit: After the salesman Ruthven was discharged April 3, 1943, and up to and including March 8, 1944, Milner did not employ a salesman to sell the lots in this subdivision, and spent no time himself on the property; he did no advertising whatever; up to January 26, 1944, only fifteen per cent of the lots were sold; he purchased water pipe in February, 1943, for the construction of a water system, but left the same in his warehouse until December, 1943; made application to the Colorado Public Utilities Commission January 24, 1944, for a certificate of convenience and necessity to operate a water system, limiting his application to Blocks 1 and 2; he successfully resisted an order of Public Utilities Commission to show cause why his application should not be amended to include Blocks 3 and 4; no application was ever made for a certificate to operate a water system on Blocks 3 and 4; it is conceded by both sides that domestic water was an absolute necessity in order to sell the lots, and that only five new contracts of sale were re-

ported by Milner after the discharge of Ruthven in April, 1943, down to January, 1944.

We are of the opinion that the trial court was abundantly justified in disallowing damages with respect to Blocks 3 and 4, and that it was extremely liberal in the allowance of $6,320.91 on account of prospective sales in Blocks 1 and 2, especially in view of the sales record made by Milner in the nine months preceding the cancellation of the contract.

Defendant in error has assigned cross error in substance as follows: That the trial court erred in not finding that the notice of immediate termination in his letter of March 8, 1944, was effective; in finding that such letter "was not an effective thirty days' notice of termination of the Heiser-Milner contract"; in awarding any damages to Milner and in not limiting damages to the loss sustained by Milner during the thirty days following March 8, 1944.

With respect to the amount of damages awarded to defendant on his cross complaint by the trial court, plaintiff states in his brief: "We shall attempt no extended examination of the evidence on this point for it would be interminable and confusing and probably lead to the conclusion that as Judge Walsh had the opportunity to observe the witnesses while listening to and taking notes upon their testimony and there appears to be some evidence which, if given full weight and credence, might support his finding, that finding and the judgment thereon will not be disturbed."

Under the above circumstances no useful purpose can be served by a discussion of the cross specifications of points of defendant in error, as we have disposed of all of them in the foregoing opinion, and the reasons herein recited for overruling the specification of points of plaintiff in error, apply with equal force to those of defendant in error.

The findings and judgment of the trial court are affirmed.